UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06-CV-420-H

NORTHWEST VENTURES INC.                                                                  PLAINTIFF

V.

PUREWAL ENTERPRISES PVT. LTD.                                                        DEFENDANTS

**MEMORANDUM OPINION**

This dispute arises from a contract between Northwest Ventures Inc. ("Northwest") and Purewal Enterprises PVT. LTD. ("Purewal") for the sale of seven Papa John's restaurants in the state of Washington. In a pre-answer motion, Defendant Purewal moved to dismiss the complaint for lack of subject matter and personal jurisdiction or, in the alternative, to transfer based upon improper venue. The Court found both subject matter jurisdiction and proper venue, but made no ruling as to personal jurisdiction. Rather, the Court invited the parties to file additional motions to resolve that issue. Purewal subsequently did file a motion to dismiss due to the absence of personal jurisdiction. With the benefit of such motion and Northwest's response, the Court now examines whether Purewal waived its challenge to personal jurisdiction and whether personal jurisdiction actually exists.

I.

Since this Court has not conducted an evidentiary hearing to determine jurisdiction, the pleadings and affidavits must be viewed in the light most favorable to Northwest, and Purewal's version of any disputed facts must not be considered. *Calphalon Corp. v. Rowlette*, 228 F.3d

718, 721 (6th Cir. 2000). The facts for the purpose of this order are largely undisputed.

Northwest is a Kentucky corporation registered to do business in the state of Washington and with offices there. Purewal is a Washington corporation that conducts business exclusively in the state of Washington. In December 2005, the parties began to negotiate for the sale of seven Papa John's restaurants located in Washington. On or about February 2, 2006, Gary Purewal, President of Purewal, signed a letter of intent to purchase the restaurants and mailed it, along with $9000.00 earnest money, to Northwest in Kentucky.

Following the letter of intent, negotiations continued. During this time, Gary Purewal, who resided in Washington, communicated with Northwest's Ben Fultz in Kentucky. In March 2006, negotiations broke down, and Purewal requested that Northwest return the earnest money. When Northwest refused, Purewal served an unfiled complaint upon Northwest's registered agent in Washington. When Northwest learned that Purewal had not filed its complaint, Northwest filed suit with this Court, apparently a few hours before Purewal was able to file in King County Superior Court in Washington State.

Soon thereafter, Purewal moved to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. The Court denied the motion as to subject matter jurisdiction and venue but refrained from ruling on personal jurisdiction since it had not been directly argued. The Court invited additional motions as to that issue, which it has since received and now considers.

## II.

Before determining whether personal jurisdiction exists over Purewal, the Court must consider whether Purewal has waived that defense. The defense of lack of personal jurisdiction

must be raised in the first responsive pleading; it is waived if it is omitted from a motion to dismiss, or if not made by motion or included in a responsive pleading. Fed. R. Civ. P. 12(h)(1); *Taubman Co. v. Webfeats*, 319 F.3d 770, 773 (6th Cir. 2003). Once the defense of lack of personal jurisdiction has been waived, a court is precluded from dismissing on those grounds. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

Purewal's first motion to dismiss purportedly sought dismissal of the case for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue, but Purewal made no direct argument concerning personal jurisdiction. In fact, there is no discussion of personal jurisdiction whatsoever in that motion. Instead, he argues that venue is improper, in part because the Western District of Kentucky lacks jurisdiction. The issue is thus whether Purewal's assertion in its motion that the court lacks personal jurisdiction, absent any direct argument as to that proposition, was sufficient to preserve the argument.

By requiring parties to raise challenges to personal jurisdiction in their first responsive pleading, Fed. R. Civ. P. 12 eliminates unnecessary delays caused by piecemeal consideration of pretrial motions. *See Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697, 701 n.3 (6th Cir. 1978). Here, Purewal challenged personal jurisdiction in its first motion to dismiss even though it failed to make any direct arguments about it. It would have been equally permissible to have first filed an answer to the complaint, raised the defense therein, and argued the defense in a subsequent motion. The Court had sufficient notice of Defendant's challenge to personal jurisdiction in its first pleading. However, the matter was not fully briefed, therefore the Court invited either party to file motions to resolve the issue.

Plaintiff cites two cases that stand for the proposition that a party who argues lack of

3

venue in a Rule 12(b) motion to dismiss without challenging personal jurisdiction waives that argument. *See Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp.2d 1039, 1048 (S.D. Ohio 2002); *and see Thomas v. Lockheed Martin Corp.*, 2006 U.S. Dist. LEXIS 26437, *5 (D. Kan. 2006). In both of these cases, however, the defendant utterly failed to challenge personal jurisdiction in an initial motion to dismiss and so clearly waived that argument. Purewal, however, challenged personal jurisdiction in his motion, even though he neglected to fully articulate the argument.

The Court concludes that Defendant did not waive the personal jurisdiction defense.

### III.

The Court must now consider the question of its personal jurisdiction over Purewal. To do so, this Court must apply Kentucky law, the state in which it sits, subject to due process limitations. *See Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980); *Hillerich & Bradsby Co. v. Hall*, 147 F.Supp.2d 672, 675 (W.D. Ky. 2001). A court's exercise of personal jurisdiction is only valid if it meets both the forum's long-arm statute and constitutional due process requirements. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Kentucky's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . transacting business in the Commonwealth . . . ." Ky. Rev. Stat. § 454.210(2)(a) (2007). This provision permits Kentucky courts to exercise jurisdiction to the fullest extent permitted by due process. *See Info-Med. Inc. v. National Healthcare, Inc.*, 669 F.Supp. 793, 795-96 (W.D. Ky. 1987). Accordingly, the extent of Kentucky's intended long-arm jurisdiction merges with the extent of the requirements of due process. *See Hall*, 147 F.Supp.2d at 676 (citing *First Nat'l Bank of Louisville v. J.W. Brewer*

4

*Tire Co.*, 680 F.2d 1123, 1125 (6th Cir. 1982)).

To subject a nonresident defendant to personal jurisdiction without violating due process, that defendant must have "minimum contacts" with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). Both Kentucky courts and the Sixth Circuit have adopted a three-part test for determining whether a defendant has the requisite minimum contacts:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)); *and see Mohler v. Dorado Wings, Inc.,* 675 S.W.2d 404, 405-06 (Ky. Ct. App. 1984). Each criterion is an independent requirement. The failure to meet any one of the three defeats a court's personal jurisdiction. *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th Cir. 1989). This case turns upon the first prong, that is, whether Purewal purposefully availed itself of acting in or causing consequences in Kentucky.

A.

To satisfy the purposeful availment prong, a party's action must be such that it "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). This requirement "ensures that a defendant will not be haled into a jurisdiction

5

solely as a result of random, fortuitous, or attenuated contacts." *Id.* A contract with an out-of-state defendant does not automatically establish minimum contacts. *Id.* at 478; *see also Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) ("merely entering into a contract . . . would not, without more, establish sufficient minimum contacts"). In a case arising from a breach of contract, the purposeful availment prong requires showing that the nonresident defendant entered into a "substantial business contract" with a party in the forum. *Hall*, 147 F.Supp.2d at 676 (citing *First Nat'l Bank of Louisville*, 680 F.2d at 1126). To make this determination, the Court must consider the prior negotiations of the parties, the future consequences contemplated by the parties, the terms of the contract, and the actual course of dealing. *See Rudzewicz*, 471 U.S. at 478-79.

Viewing the facts in the light most favorable to Plaintiff, it cannot be said that Purewal purposefully availed itself of acting in or causing consequences in Kentucky. The dispute involves a Washington corporation's one-time purchase of seven restaurants within the state of Washington. The agreement was negotiated over the phone and via electronic and paper correspondence from afar. The letter agreement at issue was mailed to Gary Purewal in Washington, signed by him, and returned to Northwest. Defendant does not allege that any agent of Purewal actually entered Kentucky for negotiations or to conduct business of any kind.

The Sixth Circuit has held that contracts between an in-state seller and an out-of-state buyer do not establish minimum contacts in cases where no other events connect the subject matter or performance of the contract to an issue in the forum state. *See Kerry Steel Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). Generally, telephone calls, letters, and faxes are the sort of "random," "fortuitous," and "attenuated" contacts that cannot serve as

the basis for haling non-resident defendants into foreign jurisdictions. *Id.* Purewal's long-distance negotiations with Northwest concerning the purchase of restaurants in Washington seem to fit precisely the definition of random or attenuated contacts.

Consequently, the Court must conclude that Purewal did not purposefully avail itself of acting in or causing consequences in Kentucky, and it could not reasonably anticipate being haled into court there.

B.

Because there has been no purposeful availment, the Court need not dwell upon the other two prongs of the test for minimum contacts. *LAK, Inc.*, 885 F.2d at 1303. However, for the sake of completeness the Court will briefly discuss the other prongs.

The second part of the test is whether the cause of action arose from Purewal's activities in the state of Kentucky. Here, the cause of action is a breach of contract. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." *Calphalon Corp.*, 228 F.3d at 723-24. Purewal's only contact with the state involves the negotiation of the agreement, which occurred between parties in Washington and Kentucky. Allegations of the breach of such agreement could be considered to have arisen from Purewal's extremely limited activities with Kentucky.

The third part of the test for minimum contacts is whether the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. To determine this, the Sixth Circuit looks at the burden on the defendant, the interest of the forum state, the plaintiff's interest

7

in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies. *Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2002). True, the dispute does involve a Kentucky citizen. But that Kentucky citizen chose to do business in the state of Washington and under that state's laws. A dispute arising from such circumstances creates only an attenuated interest for Kentucky. While this could be a close question, as a general matter, Purewal's relationship and dealings with Kentucky seem so attenuated that the exercise of jurisdiction over it would be unreasonable.

   The Court will enter an order consistent with this Memorandum Opinion.

cc:  Counsel of Record